0319982160.3/SIC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPINE SPECIALISTS OF MICHIGAN, P.C.,                CASE NO. 4:15-cv-14102-LVP-
(STELLA NAJOR and ARACELIS NAJJAR),                 RSW
                                                    HON. LINDA PARKER
    Plaintiffs,

vs.

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, a foreign corporation,

    Defendant.
_____/
JEAN E. CHARBONEAU P43057
PADILLA LAW GROUP
Attorneys for Plaintiff
1821W. Maple Road
Birmingham, MI 48009
(248) 593-0300 / fax (248) 593-0301
jcharboneau@padillalegal.com

ALICIA SIERFER LABEAU (P70874)
Attorney for Def. Citizens
840 W. Long Lake Rd., Ste. 600
Troy, MI  48098
(248) 312-2800 / fax (248) 897-0042

Ernesto E. Bridgnanan (P34556)
Attorney for Defendant(s), ALLSTATE
PROPERTY & CASUALTY INSURANCE
COMPANY
27555 Executive Drive, Suite 270
Farmington Hills, MI  48331-3570
(248) 324-1621
(866) 537-7795 (fax)
_____/


**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

2

NOW COMES Defendant ALLSTATE PROPERTY AND CASULATY INSURANCE COMPANY, by and through their attorney, Ernesto E. Bridgnanan, and moves this Honorable Court to issue an Order, granting Defendant's Motion for Summary Judgment. In support of this motion, the Defendant states:

1. Plaintiff (a healthcare provider) filed this lawsuit against Defendant seeking reimbursement of limited Michigan No-Fault PIP (medical) expenses allegedly "incurred" by Stella Najor and Aracelis Najjar following a March 18, 2014 motor vehicle accident in which its' patient was allegedly injured. The matter was initially filed in state court and then removed to this Court. **Complaint/Notice of Removal - Exhibit 1.**

2. On May 25, 2017, the Michigan Supreme Court released its Opinion in the matter *Covenant Medical Center, Inc. v. State Farm Mutual Automobile Ins. Co.*,  __ Mich __, 895 N.W.2d 490 (2017); (**Exhibit 2**), wherein the Court held that under the language of the No-Fault Act, a healthcare provider has no statutory right to bring a suit against a No-Fault insurer for an injured person's PIP benefits.

3. Furthermore, there can be no breach of Contract as no contract exists between the plaintiff healthcare provider and the defendant insurer.

4. Additionally, courts have routinely rejected the theory that healthcare providers are the intended third-party beneficiaries of insurance contracts between a insurer and its insured.

5. Additionally, any purported assignment wherein an injured person assigns only a small portion of his No-Fault benefits to a healthcare provider does not save the provider's cause of action from summary judgment based on application of the assignor/assignee relationship and Michigan rules regarding compulsory joinder of claims and necessary joinder of parties.

6. Based on the foregoing, Plaintiff medical provider's lack standing to bring this lawsuit for No-Fault benefits and have failed to state a claim upon which relief may be granted. As such, Defendant is entitled to judgment as a matter of law.

7. That Defendant, Allstate Insurance Company, is entitled to summary judgment pursuant to FRCP 56, as there is no genuine dispute of material fact and defendant is entitled to judgment as a matter of law.

8. Additionally, Defendant Allstate Insurance Company is entitled to summary judgment pursuant to FRCP 12(b) as this Court now lacks jurisdiction and because the plaintiff has failed to state a claim upon which relief can be granted.

9. As the plaintiff has no valid cause of action, the defendant is entitled to judgment on the pleadings pursuant to FRCP 12(c).

10. The Defendant reached out to Plaintiff's counsel to seek concurrence in this motion pursuant to LR 7.1 but was unable to obtain concurrence in the relief requested.

WHEREFORE, Defendant, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, requests this Honorable Court grant its Motion for Summary Judgment and enter an order dismissing Plaintiff medical provider's cause of action, in its entirety, with prejudice and with costs and attorney fees.

Respectfully submitted,

/s/ Ernesto E. Bridgnanan

Ernesto E. Bridgnanan (P74214)
Attorney for Defendant, ALLSTATE
PROPERTY AND CASULATY
INSURANCE COMPANY
27555 Executive Drive, Suite 270
Farmington Hills, MI  48331-3570
(248) 324-1621
(866) 537-7795 (fax)
ebrii@allstate.com

Dated:  August 17, 2017

**PROOF OF SERVICE**

The undersigned certifies that the foregoing
instrument was served on all parties, or their
attorneys of record, in the action noted above,
at their last known address on;
August 17, 2017.  Service was performed by:

____ U.S. Mail                    ____ Fax
____ Hand Delivery           ____ Overnight Express
__x__ Other (e-file)

Signature:_____/s/ Ernesto E. Bridgnanan_____

0319982160.3/SIC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPINE SPECIALISTS OF MICHIGAN, P.C.,             CASE NO. 4:15-cv-14102-LVP-
(STELLA NAJOR and ARACELIS NAJJAR),              RSW
                                                 HON. LINDA PARKER
    Plaintiffs,

vs.

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, a foreign corporation,

    Defendant.
_____/
JEAN E. CHARBONEAU P43057
PADILLA LAW GROUP
Attorneys for Plaintiff
1821W. Maple Road
Birmingham, MI 48009
(248) 593-0300 / fax (248) 593-0301
jcharboneau@padillalegal.com

ALICIA SIERFER LABEAU (P70874)
Attorney for Def. Citizens
840 W. Long Lake Rd., Ste. 600
Troy, MI  48098
(248) 312-2800 / fax (248) 897-0042

Ernesto E. Bridgnanan (P34556)
Attorney for Defendant(s), ALLSTATE
PROPERTY & CASUALTY INSURANCE
COMPANY
27555 Executive Drive, Suite 270
Farmington Hills, MI  48331-3570
(248) 324-1621
(866) 537-7795 (fax)
_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Concise Statement of the Issues Presented

**(1) Whether Defendant is entitled to summary judgment as the plaintiff does not possess a statutory cause of action pursuant to Michigan law?**

Defendant Allstate answers "yes"

**(2) Whether Defendant is entitled to summary judgment as no contract exists between the plaintiff healthcare provider and the defendant?**

Defendant Allstate answers "yes"

**(3) Whether Defendant is entitled to summary judgment because the plaintiff healthcare provider is merely an intended third-party beneficiary?**

Defendant Allstate answers "yes"

**(4) Whether Defendant is entitled to summary judgment even in the face of any purported assignment of benefits because the defendant's policy precludes transfer of policy benefits?**

Defendant Allstate answers "yes"

**(5) Whether Defendant is entitled to summary judgment even in the face of any purported assignment of benefits pursuant to rules concerning the relationship of assignor/assignee?**

Defendant Allstate answers "yes"

**Controlling Authority for the Relief Sought**

*(1)*   *FRCP 56*

*(2)*   *FRCP 12*

*(3)*   *Covenant Medical Center, Inc. v. State Farm Mutual Automobile Ins. Co.*,  __ Mich __, 895 N.W.2d 490 (2017)

*(4)*   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

*(5)*   *Matsushita Electric Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)

*(6)*   *MCL 500.3101 et. seq.*

*(7)*   *In re Crisan's Estate, 362 Mich 569; 107 NW2d 907 (1961)*

*(8)*   *Proudfoot v State Farm Mut Ins Co, 469 Mich 476; 673 NW2d 739 (2003)*

*(9)*   *MCL 500.3112*

*(10)*   *MCL 500.3157 and MCL 500.3158*

*(11)*   *LaMothe v Auto Club Ins Assoc, 214 Mich App 577; 543 NW2d 42 (1996)*

*(12)*   *Rory v Contl Ins Co, 473 Mich 457, 460; 703 NW2d 23 (2005)*

*(13)*   *MCL 600.1405*

*(14)*   *Brunsell v Zeeland, 467 Mich 293 at 296, 651 NW2d 388 (2002)*

*(15)*   *Schmalfeldt v N Pointe Ins Co, 469 Mich 422, 427; 670 NW2d 651, 654 (2003)*

*(16)*   *McKnight v Lowitz. 176 Mich 452, 142 NW2d 769 (1913);*

*(17)*   *Master Spark Co v Hickerson, 211 Mich 411, 179 NW2d 232 (1920)*

*(18)*   *MCL 500.3143*

*(19)*   *Allen v Michigan Bell Tel. Co., 18 Mich App 632 (1969)*

*(20)*   *MCL 500.3107*

*(21)*   *Burkhart v Bailey, 260 Mich App 636, 653; 680 NW2d 453 (2004);*

(22)    *First of America v Thompson, 217 Mich App 581, 587; 522 NW2d 516 (1996)*

(23)    *Auto Club Ins Ass'n v New York Life, 440 Mich 126; 485 NW2d 695 (1992)*

(24)    *MCR 2.203*

(25)    *MCR 2.205*

(26)    *Adair v Michigan, 470 Mich 105, 121; 680 NW2d 386 (2004)*

(27)    *Dart v Dart, 460 Mich 573, 586;597 NW2d 82 (1999)*

(28)    *Rowry v University of Michigan, 441 Mich 1, 20-21; 490 NW2d 305 (1992)*

(29)    *Fast Air v Knight 235 Mich App 541; 599 NW2d 489 (1999)*

(30)    *MCL 600.2041*

(31)    *MOSES, Inc. v Southeast Michigan Counsel of Governments, 270 Mich App 401; 716 NW2d 278 (2006)*

(32)    *Rhode v. Ann Arbor Pub Schools, 265 Mich App 702, 705;  698 NW2d 402 (2005)*

(33)    *Barclae v Zarp, 300 Mich App 455, 483; 438 NW2d 100 (2013)*

(34)    *Elk grove Unified School Dist. v Newdow, 542 US 1 (2004)*

(35)    *Miller v Allstate Ins Co., 481 Mich 601, 608-612; 751 NW2d 463 (2008)*

(36)    *Monsanto Co v Greerston Seed Farms, 561 US 139, 153 (2010)*

(37)    *Detroit Fire Fighters Ass'n v Detroit, 449 Mich 629, 633; 537 NW2d 436 (1995)*

(38)    *Allstate Insurance Company v Hayes, 442 Mich 56, 68; 499 NW2d 743 (1993)*

(39)    *Brown v Kalamazoo Circuit Judge, 75 Mich 274, 280; 42 NW 827 (1889)*

(40)    *Tice v Wright, Hoyt & Co, 284 Mich 435, 439; 280 NW 19 (1938)*

## INTRODUCTION

Defendant does not dispute that a medical provider furnishing products, services, and/or accommodations to a person for injuries sustained in a motor vehicle accident has a "claim" and "right" to be paid for those services. That right, of course, may be founded on a legal theory of an express or implied contract between the provider and the patient, or under an equitable theory of quasi contract. In turn, the person that incurs products, services, and/or accommodations associated with injuries arising out of the ownership, operation, maintenance and/or use of a motor vehicle is vested with a right to claim No-Fault benefits against the applicable insurer. Neither proposition is novel or in dispute. *In re Crisan's Estate*, 362 Mich 569; 107 NW2d 907 (1961). Indeed, because no-fault benefits are only payable to the extent that loss has been "incurred," as a universal threshold matter for any No-Fault claim, patient has a legal obligation to the provider. *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476; 673 NW2d 739 (2003).

While a medical provider has certain "rights" and "claims" against its patient, those rights and claims are distinct from the ones the patient has against his insurer. Nothing in the plain language of the No-Fault act elevates a medical provider's general right to be paid for services rendered into a right to claim insurance benefits from its patient's insurer. The Supreme Court held that nothing in the plain language of the No-Fault act gives healthcare providers the right to file a direct cause of action against an insurer of their patient. *Covenant Medical Center, Inc. v. State Farm Mutual Automobile Ins. Co*__ Mich __, 895 N.W.2d 490 (2017) (**Exhibit 2**). The Michigan Supreme Court held that while the No-Fault act, "allows for the common practice of no-fault insurers directly paying healthcare providers," it "does not require direct payment of healthcare providers or give providers any right to directly sue a no-fault insurer[.]" *Covenant* at p. 15. The text of the no-fault act itself does not vest healthcare providers with rights and claims to proceed directly against their patient's insurers.

As such, healthcare providers lack standing under the No-Fault Act to sue No-Fault insurers such as Defendant, directly, for an injured person's PIP benefits. Furthermore, no standing is conferred to a healthcare provider to bring suit directly against the No-Fault insurer as an intended third-party beneficiary of an insuring contract between an insured and the No-Fault insurer. Additionally, an assignment purporting to assign only a portion (that is, only the healthcare provider's bills) of an injured person's entire No-Fault benefits claim to a healthcare provider still warrants summary judgment of a healthcare provider's direct cause of action against the No-Fault insurer based on application of the assignor/assignee relationship.

## **STANDARD OF REVIEW**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. See *Anderson v. Liberty Lobby*, 477 U.S. at 252.

Motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction must include inquiry by court into its own jurisdiction. *Menchaca v. Chrysler Credit Corp*. (5th Cir.

Tex.)(1980), 613 F2d 507, 512, cert. denied, (1980), 449 US 953, 101 S Ct 358, 66 L Ed 2d 217. Where defendant moves for dismissal for lack of subject matter jurisdiction, as well as on other grounds, court should rule first on Rule 12(b)(1) challenge since if it must dismiss complaint for lack of subject matter jurisdiction, all other defenses and objections, including alleged lack of personal jurisdiction, become moot and do not need to be determined. *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n* (2d Cir. N.Y.)(1990), 896 F2d 674. When considering motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), court must take all facts alleged in complaint as true and draw all reasonable inferences in favor of plaintiff. *El-Khader v. Perryman* (N.D. Ill. Apr. 1, 2003), 264 F Supp 2d 645, aff'd, (7th Cir. Ill)(2004), 366 F3d 562. Federal court has subject matter jurisdiction to decide non-frivolous claim brought under federal statute, and decision dismissing such claim is decision on merits of that claim, and thus district court should dismiss action pursuant to Rule 12(b)(6) for failure to state claim, rather than for lack of subject matter jurisdiction under Rule 12(b)(1). *Cement Masons Health & Welfare Trust Fund v. Stone* (9th Cir. Cal.)(1999), 197 F3d 1003, cert. denied, (U.S. Jan. 14, 2002), 534 US 1104, 122 S Ct 902, 151 L Ed 2d 871.

## LAW AND ARGUMENT

### A. SUMMARY JUDGMENT IS WARRANTED AS HEALTHCARE PROVIDER HAS NO STATUTORY CAUSE OF ACTION AGAINST DEFENDANT INSURER

The sole issue addressed by the Supreme Court in *Covenant* was whether a healthcare provider has the right to sue a No-Fault insurer directly to recover PIP benefits "incurred" by an injured person. "This case presents the significant question of whether a healthcare provider possesses a statutory cause of action against a no-fault insurer to recover personal protection insurance benefits for allowable expenses incurred by an insured under the no-fault act, MCL 500.3101 et seq." *Id*. (*Covenant* at 1).

**"Standing"** is capacity of a party to bring suit in court. The *Covenant* analysis and holding addressed whether a healthcare provider has standing to bring a lawsuit against a No-Fault insurer for PIP benefits "incurred" by an injured person. The Supreme Court now holds as a matter of law: "[A] provider simply has no statutory cause of action of its own to directly sue a no-fault insurer." It was of no consequence to the Supreme Court's ultimate decision regarding a provider's lack of standing that MCL 500.3112 provides No-Fault insurers with the option to pay either an injured person or a provider for "incurred" PIP benefits. Indeed, the Supreme Court still held that while a healthcare provider may be entitled to direct payment of its bills from a No-Fault insurer under MCL 500.3112, the No-Fault Act does not provide legal standing to a healthcare provider to bring a lawsuit for accrued PIP benefits allegedly incurred by an injured person.

As such, healthcare providers similarly situated as Plaintiff-Provider in this case, lack standing under the No-Fault Act to sue No-Fault insurers such as Defendant, directly, for an allegedly injured person's PIP benefits. In looking to the plain language of the No-Fault Act, the Supreme Court points out that while only two sections of the Act mentioned healthcare providers (MCL 500.3157 and MCL 500.3158), **neither conferred the healthcare provider with the right to sue for reimbursement of medical expenses.** The Supreme Court also performed a sentence-by-sentence dissection of MCL 500.3112 in the face of Covenant's argument that this provision conferred the statutory right. The Court found that this statute simply gives the No-Fault insurer the option of either paying medical expense benefits to the injured person or directly to the healthcare provider but **does not** entitle the healthcare provider to bring a direct cause of action against the No-Fault insurer.

> While this provision [MCL 500.3112] undoubtedly allows no-fault insurers to directly pay healthcare providers for the benefit of an injured person, **its terms do not grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person.** Rather, MCL 500.3112

12

permits a no-fault insurer to discharge its liability to an injured person by paying a healthcare provider directly, on the injured person's behalf. *Id.* (*Covenant* at 2)(emphasis added).

The Supreme Court's holding is clear, direct, and binding in this case and as such, the provider's claims in this suit, must be dismissed in their entirety.

**B. SUMMARY JUDGMENT IS WARRANTED AS NO CONTRACT EXISTS BETWEEN THE HEALTHCARE PROVIDER AND THE INSURANCE CARRIER AND THE HEALTHCARE PROVIDER IS NOT (AND CAN NEVER BE) A THIRD-PARTY BENEFICIARY OF THE INSURANCE CONTRACT**

The right to personal protection insurance benefits, in most cases (as it is here as this is not a Michigan Assigned Claims Plan (MACP) matter), is founded upon the law of contracts. See, *LaMothe v Auto Club Ins Assoc*, 214 Mich App 577; 543 NW2d 42 (1996). While Michigan law certainly imposes mandatory benefit requirements that cannot be contracted around, the fundamental essence and nature of no-fault coverage is an insurance contract between an insured and an insurer. See *Rory v Contl Ins Co*, 473 Mich 457, 460; 703 NW2d 23 (2005).

Accordingly, a medical provider is not (and can never be) a third party beneficiary of this contract between the insured and the insurer. By way of statute, Michigan subscribes to the modern common law view concerning whether a third party to a contract may take action to enforce it. Under MCL 600.1405:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

However, the Michigan Supreme Court concluded that the legislature recognized a distinction between "intended beneficiaries" and "incidental beneficiaries." The plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a

right to sue for breach of that promise, thus, only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor. *Brunsell v Zeeland*, 467 Mich 293 *at* 296, 651 NW2d 388 (2002), [*Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651, 654 (2003).]

In *Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, the Michigan Supreme Court considered whether an injured bar patron was entitled to sue an insurer for payments under a medical payment provision contained in the policy covering the bar. The Court concluded that under MCL 600.1405, the patron could only maintain that action directly against the insurer if the patron was found to be an "intended beneficiary" under the policy. The Court concluded that despite the benefit that patron could potentially gain by virtue of the insurance contract, he was only incidental beneficiary. The Court reasoned that:

> [t]he focus of the inquiry, however, should be whether North Pointe, by its agreement to cover medical expenses for bodily injuries caused by accidents, had undertaken to give or to do or refrain from doing something directly to or for Schmalfeldt pursuant to the third-party beneficiary statute, M.C.L. § 600.1405(1). Thus, as *Brunsell* clarifies, we must turn to the contract itself to see whether it granted Schmalfeldt third-party beneficiary status.

> We affirm the decision of the Court of Appeals because the contract contains no promise to directly benefit Schmalfeldt within the meaning of 1405. Nothing in the insurance policy specifically designates Schmalfeldt, or the class of business patrons of the insured of which he was one, as an intended third-party beneficiary of the medical benefits provision. At best, the policy recognizes the possibility of some incidental benefit to members of the public at large, but such a class is too broad to qualify for third-party status under the statute. *Brunsell*, supra at 297, 651 NW2d 388; *Koenig*, supra at 680, 597 NW2d 99.

> Only intended beneficiaries, not incidental beneficiaries, may enforce a contract under 1405. *Koenig*, supra at 680, 597 NW2d 99. Here, the contract primarily benefits the contracting parties because it defines and limits the circumstances under which the policy will cover medical expenses without a determination of fault. This agreement is between the contracting parties, and Schmalfeldt is only an incidental beneficiary without a right to sue for contract benefits. For this reason, North Pointe is entitled to summary disposition. The Court of Appeals judgment in favor of defendant is affirmed. MCR 7.302(G)(1). [*Schmalfeldt*, surpa at 429.]

Applying that reasoning to the no-fault context, like the bar patron, the medical provider is merely an incidental beneficiary. Like the bar patron, the PIP coverage is there for the benefit of the injured person, the insured (and individuals specifically contemplated under the policy and the statute). After all, the name chosen by the legislature was "personal protection insurance."

Additionally, the applicable insurance contract between the insurer and the insured precludes the transfer of this policy and rights under this policy to other persons or entities. (**Exhibit 3 at Page 4**). The policy under the section entitled Transfer indicates that the policy can't be transferred to anyone without the consent of Allstate.

This Court should hold that a healthcare provider is, at best, an incidental beneficiary without the right to a direct cause of action against the insurer.

C. **SUMMARY JUDGMENT IS WARRANTED IN THE FACE OF AN ASSIGNMENT STRICTLY LIMITED TO THE HEALTHCARE PROVIDER'S BILLS BASED UPON THE ASSIGNOR/ASSIGNEE RELATIONSHIP AND MICHIGAN RULES CONCERNING MANDATORY JOINDER OF CLAIMS**

In many instances, healthcare provider Plaintiffs have appeared to have obtained individual assignment(s) purporting to splinter the injured person's entire No-Fault claims of medical bills. This policy forbids such attempts to transfer benefits under the policy. However, regardless of that the defendant will address arguments anticipated from the plaintiff. In none of the instances where assignments are purportedly obtained, is the assignment for **all** of person's no fault benefits; instead, assignments are strictly limited to the healthcare provider's bills.  This is a misguided attempt by healthcare providers to maintain or bring a cause of action against a No-Fault insurer.

1. **The Courts should be prepared to address the facial validity of the assignments presented by healthcare providers before determining whether the assignment can defeat the No-Fault insurer's Motion**

It is self-evident that an assignee of a claim must plead and provide the assignment. *McKnight v Lowitz.* 176 Mich 452, 142 NW2d 769 (1913); *Master Spark Co v Hickerson*, 211

Mich 411, 179 NW2d 232 (1920).  Therefore the Court must first address the facial validity of the purported assignments through *voir dire* of the alleged injured party to determine:  (1) whether informed consent was given for the assignment; (2)   the consideration given to obtain the assignment; (3)   whether the assignment was obtained to determine conformity with MCL 500.3143 (ban against assignment of future benefits) and MCL 500.3145 (commonly referred to as the one-year-back rule); and (4) whether the assignment was truly signed by the injured party. The court must consider whether the assignment was signed prior to or after treatment occurred and/or whether the assignment complies with the general rules of Michigan contract law.

When analyzing consent and consideration the defendant urges the Court to look to the legality of any purported assignments. While the courts in Michigan have held that parties are free to contract, that freedom is not a blanket license as the "public is concerned with the legality of contracts and limits the contractual freedom of private parties to legal undertakings. *Allen v Michigan Bell Tel. Co.*, 18 Mich App 632 (1969). If the court were to find the assignment invalid, summary judgment must be granted.

**2.  Even if the Court determines that the purported assignment was facially valid, the Court must then discern what rights are being assigned.**

Even if the assignments appear to be valid on their face, the Court them must ascertain specifically what rights are being assigned.  In order to address what rights are being assigned, the Court must consider the distinctions between a No-Fault benefits claim, a claim for PIP benefits and a legal claim for all No-Fault benefits.  According to the Supreme Court in *Covenant*, a claim for No-Fault benefits encompasses a claim for property protection benefits, work loss benefit s and PIP benefits.  PIP benefits under MCL 500.3107 includes allowable expenses consisting or all reasonable charges incurred for reasonably necessary products, services and/or accommodations for an injured person's care, recovery and rehabilitation and other allowable expenses such as

replacement services, attendant care, and wage loss.   Therefore a No-Fault benefits claim encompasses all of the PIP benefits to which the injured person may be entitled.

Whether a person makes a No-Fault benefits claim with a No-Fault insurer, directly, or indirectly, the No-Fault benefits claim is assigned a single claim number unique to that claim that never changes.   Contrast this with a "claim" made with a health insurer under a health insurance policy, wherein a new claim number is generated every time a new bill is submitted to the health insurance carrier.

Under this logic and the No-Fault scheme, bills from a healthcare provider do not constitute separate No-Fault benefit claims but rather constitute only a very specific and limited subset of an injured person's PIP benefits.   Thus, **when an injured person purports to assign rights strictly related to the healthcare provider's bills, and nothing more, this assignment does not constitute an assignment of the injured person's No-Fault benefits claim or any other part of the injured person's PIP benefits.**

As such, in every instance where the same injured person has made assignments to limited PIP benefits to multiple healthcare providers, but does not assign his rights to work loss benefits, attendant care or replacement serves expenses to these same providers, the healthcare providers merely become partial assignees of an injured person's overall No-Fault benefits claim, with the alleged person's assignor still maintaining a vested right to the remainder of his PIP benefits and No-Fault benefits claim.

3. **The law is clear, an assignee can never acquire rights greater than the assignor**.

"An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses" *Burkhart v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004); *First of America v Thompson*, 217 Mich App 581, 587; 522 NW2d 516 (1996).   Thus, an assignee

has a legal right only if the assignor had the legal right to assign.  See *Auto Club Ins Ass'n v New York Life Ins Co.*, 440 Mich 126, 133-134; 485 NW2d 695 (1992)

> **4. Compulsory joinder of legal claims in Michigan Courts prohibits an injured person from ever holding the right to file piece-meal litigation against the same No-Fault insurer for No-Fault benefit for the same accident.**

State Court No-Fault actions typically follow MCR 2.302(A). According to MCR 2.203(A), the Compulsory Joinder rule states:  "In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and dos not require for its adjudication the presence of third parties over whom the Court cannot acquire jurisdiction".  This means a person seeking entitlement of No-Fault benefits **may only file suit in one court, and this single suit must be for any and all outstanding accrued No-Fault benefits through the date of filing.**

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action" *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004).  "Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical" *Dart v Dart*, 460 Mich 573, 586;597 NW2d 82 (1999).  Michigan courts have applied the doctrine broadly as barring not only legal claims that have already been litigated "but also every claim arising from the same transaction that the parties, exercising reasonable diligence could have raised but did not".  *Adair,* supra, at 121. Further, MCR 2.203(A) was designed to stop parties from endlessly litigating matters involving the same questions and claims as those presented in pending litigation. *Rowry v University of Mic*higan, 441 Mich 1, 20-21; 490 NW2d 305 (1992).

> The Courts quite uniformly agree that parties may not be harassed by new suits brought by the same plaintiff involving the same questions as those in pending litigation.  If this were not so, repeated suits involving useless expenditures of money and energy could be daily launched by a litigious Plaintiff involving one and the same matter.  Courts will not lend their aid to proceedings of such a character, and the holdings are quite uniform in this

subject. *Fast Air v Knight* 235 Mich App 541; 599 NW2d 489 (1999) (quotations and citations omitted)

Following MCR 2.203(A), it is obvious that one could never file suit against the No-Fault insurer in one court demanding payment for replacement service benefits and at the same time file a separate suit in a completely separate court against the same insurer for the same accident for PIP benefits and allowable expenses and wage loss benefits. Similarly, the rule also forbids one from filing suit against a No-Fault insurer in one court for an MRI bill while at the same time, maintaining a separate and distinct lawsuit against the same No-Fault insurer for the same accident in another court for a injection bill, for example.

In other words, MCR 2.203(A), Compulsory joinder, never permits a person to pursue fragmented or piece-meal litigation for subsets of No-Fault benefits against the same No-Fault insurer arising out of the same accident. Thus, a person never has the right to bring fragmented or piece-meal litigation for subsets of No-Fault benefits against the same No-Fault insurer arising out of the same accident.

**5. If an assignor never holds the right to file piece-meal litigation against the same No-Fault insurer for subsets or fragments of his No-Fault benefits for the same accident, then he can never assign such a right to any provider**

Applying the logic provided by the Courts and the Michigan Court Rules, to the relationship created between the alleged injured person (the Assignor) and the healthcare providers (the Assignee) vis-a-vis assignments, and because assignees never acquire any rights greater than the assignors, this necessarily means that if an allegedly injured person/assignor never has the right to piece-meal litigation against the same No-Fault provider for subsets or fragments of his No-Fault benefits for the same accident, than the alleged injured person/assignor can never assign a right that does not exist to them to anyone or any entity/provider. Any such assignment purporting to do so must be deemed invalid because the assignment is nothing more than an illusory promise

under the law of a right that does not exist.  If the assignment is invalid, that the within Motion must be granted and the Plaintiff/Provider's suit must be dismissed.

**6.  Based on the healthcare provider's status as only a partial assignee of the alleged injured person's No-Fault benefits, and the injured person/assignor still retaining rights to the remainder of his No-Fault benefits, the alleged injured person/assignor still remains a real-party in interest and all lawsuits where his entitlement to No-Fault benefits are at issue.**

In order to prove entitlement to No-Fault benefits under the No-Fault act, MCL 500.3101 et seq., an alleged injured person must prove that his injuries arose out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, that he incurred either the allowable expense or replacement service or suffered work loss.

"An action must be prosecuted in the name of the actual party in interest" MCL 600.2041. "A real party in interest is one who is vested with a right of action in a given claim, although the beneficial interest may with another." *MOSES, Inc. v Southeast Michigan Counsel of Governments,* 270 Mich App 401, 415;  716 NW2d 278 (2006), quoting *Rhode v. Ann Arbor Pub Schools*, 265 Mich App 702, 705;  698 NW2d 402 (2005).  "The purpose of the [real party in interest] rule is to protect the defendant by requiring that he claim be prosecuted by the party who by the substantive law in question owns the claim asserted against the defendant". *Hofmann* supra at 95 (quoting Martin, Dean & Webster, Michigan Court Rules Practice, p. 6) "**The doctrine protects a defendant from multiple lawsuits for the same cause of action**". *Barclae v Zarp*, 300 Mich App 455, 483; 438 NW2d 100 (2013).  The real party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another". *Elk grove Unified School Dist. v Newdow*, 542 US 1 (2004).

The principal of statutory standing is jurisdictional; if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceedings or reach the merits.  *Miller v Allstate Ins Co*., 481 Mich 601, 608-612; 751 NW2d 463 (2008).  **"[A] Plaintiff must**

**demonstrate standing separately for each form of relief sought**" *Monsanto Co v Greerston Seed Farms*, 561 US 139, 153 (2010)(Quotation and citations omitted). The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to "ensure sincere and vigorous advocacy". *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633; 537 NW2d 436 (1995). The standing inquiry focuses on whether a litigant "is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable". *Allstate Insurance Company v Hayes*, 442 Mich 56, 68; 499 NW2d 743 (1993). (Quotations and internal citations omitted)

In circumstances involving only a partial assignment of rights to No-Fault benefits, under the law, both the assignor and all partial assignees are real parties in interest. This is because each possesses a substantial beneficial interest in the outcome of litigation relative to the alleged injured person's entitlement to No-Fault benefits. This is aptly supported by the fact that anyone bringing a First-Party Action for No-Fault benefits is required to prove all burdens or proof for a First-Party action as reflected by the jury instructions and the jury verdict form.

Under state court rule, MCR 2.205, Necessary Joinder, "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as Plaintiffs or Defendants in accordance with their respective interests. *Id.* Joinder is required of all parties "concerned in the controversy… to have their respective interest charged or protected and to end the controversy once for all". *Brown v Kalamazoo Circuit Judge*, 75 Mich 274, 280; 42 NW 827 (1889). A party is "indispensable" to a case if that party has "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience". *Tice v*

*Wright, Hoyt & Co*, 284 Mich 435, 439; 280 NW 19 (1938) (internal quotations and citations omitted).

Under the Michigan requirement of necessary joinder of parties, in any action brought under the No-Fault Act wherein an allegedly injured person's entitlement to No-Fault benefits is at issue, any and all real parties in interest must be joined, based upon their collective interest in the adjudication of the alleged injured person's entitlement to No-Fault benefits. **This means that any and all partial assignees, along with the assignor, must be joined as necessary parties to the action**. This conclusion is perfectly supported by the doctrines of res judicata and collateral estoppel. The assignment of splintered, partial PIP benefits to a healthcare provider does nothing more than create multiple real parties in interest relative to an alleged injured parties No-Fault benefits claim. Therefore, in order for any one of the real parties in interest to maintain a valid cause of action against a No-Fault insurer for entitlement to the alleged injured person's No-Fault benefits, all real parties in interest must be joined to that action as party Plaintiffs, including the allegedly injured person. Since Plaintiff providers have failed to join each and every partial assignee of the alleged injured person's No-Fault PIP benefits, along with the injured person, to this case, Plaintiff provider's cause of action must be dismissed.

## CONCLUSION

It is clear that healthcare providers lack standing under the No-Fault Act to sue insurers such as this Defendant, directly, for a portion of the alleged injured person's limited No-Fault benefits. Furthermore, no standing is conferred to a healthcare provider to bring suit directly against the No-Fault insurer as an intended third-party beneficiary of an insuring contract between an insured and the No-Fault insurer. And an assignment purporting to assign only a portion of one's entire No-Fault benefits claim to a healthcare provider still warrants summary judgment based on the law and reasoning cited above.

22

WHEREFORE, the defendant, ALLSTATE INSURANCE COMPANY, respectfully requests that this Honorable Court grant its motion for summary judgment and dismiss Plaintiff's claims against Defendant Allstate, with prejudice, and award Defendant costs and reasonable attorney fees for the necessity of bringing this motion.

Respectfully submitted,


 /s/ Ernesto E. Bridgnanan
Ernesto E. Bridgnanan (P74214)
Attorney for Defendant, ALLSTATE
PROPERTY AND CASULATY
INSURANCE COMPANY
27555 Executive Drive, Suite 270
Farmington Hills, MI  48331-3570
(248) 324-1621
(866) 537-7795 (fax)
ebrii@allstate.com

Dated:  August 17, 2017

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on all parties, or their attorneys of record, in the action noted above, at their last known address on;
August 17, 2017.  Service was performed by:

\_\_\_\_ U.S. Mail          \_\_\_\_ Fax
\_\_\_\_ Hand Delivery      \_\_\_\_ Overnight Express
\_\_x\_\_ Other (e-file)

Signature:\_\_\_\_\_/s/ Ernesto E. Bridgnanan_____